**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.13-4624
_____

T.F., a minor by his parents;
D.F. and T.S.F., and on their own behalf,

*Appellants*

v.

FOX CHAPEL AREA SCHOOL DISTRICT
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-12-cv-01666)
District Judge: Honorable Arthur J. Schwab
_____

Submitted Under Third Circuit LAR 34.1(a)
September 12, 2014

Before: RENDELL, GREENAWAY, JR. and SLOVITER *Circuit Judges*

(Opinion Filed: September 22, 2014 )

_____

OPINION
_____

SLOVITER, *Circuit Judge*.

This appeal was filed by T.F., a former student who resides in the Fox Chapel Area School District ("Fox Chapel"), and his parents, T.S.F. (his mother) and D.F. (his father). T.F. has a severe tree nut allergy that can cause anaphylaxis—a life-threatening allergic reaction. T.F. and his parents (collectively "Appellants") initiated this civil rights action alleging disability discrimination against Fox Chapel. Specifically, Appellants claim that Fox Chapel, a recipient of federal financial assistance, failed to provide a Free Appropriate Public Education ("FAPE") and discriminated against T.F. in violation of Section 504 of the Rehabilitation Act of 1973, Chapter 15 of the Pennsylvania Code, and the Pennsylvania Human Relations Act. Fox Chapel counters that, after approximately four months of working to develop an appropriate service agreement known as a "504 Plan," which was intended to outline the services and accommodations T.F. would receive, T.F.'s parents unilaterally decided to remove T.F. from Fox Chapel.

T.F.'s parents filed a request for an administrative Due Process Hearing on February 2, 2011 with the Pennsylvania Department of Education ("Department"), Office of Dispute Resolution. After four sessions, the Special Education Hearing Officer determined on August 12, 2012 that Fox Chapel met its obligation to provide a FAPE to T.F. On November 11, 2012, T.F. and his parents filed suit in the United States District Court for the Western District of Pennsylvania seeking reversal of the Hearing Officer's decision. The parties cross-moved for summary judgment. The District Court denied

T.F's motion and granted Fox Chapel's motion on all counts. Appellants filed a timely appeal, which is before us for decision. For the following reasons, we affirm.[1]

I.

In the fall of 2010, T.F. was five years old and scheduled to enroll at Fox Chapel's Elementary School. T.F.'s mother, T.S.F., had attended Fox Chapel's kindergarten orientation in the spring of 2010 and had discussed T.F.'s allergies with both the principal and school nurse. Additionally, on May 10, 2010, Fox Chapel had adopted a comprehensive district-wide food allergy policy. The food allergy policy encompassed procedures for training staff in dealing with food allergies, including recognizing symptoms and responding to possible emergencies. T.F.'s parents were not provided a copy of the district's food allergy policy until the first day of the administrative hearing in this case.

Prior to the start of the school year, T.F.'s parents requested a meeting with school staff to develop a 504 Plan. At that meeting, which took place on June 7, 2010, T.S.F. provided Fox Chapel with a letter from T.F.'s doctor outlining his medical needs. Based on that information, Fox Chapel agreed that T.F. qualified for a 504 Plan because of his food allergy.

The original 504 Plan dated June 7, 2010 proposed by Fox Chapel included three accommodations: (1) T.F. would not be provided food while in Fox Chapel's care unless

---

[1] The District Court had federal question jurisdiction over alleged violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) pursuant to 28 U.S.C. § 1331. The District Court had supplemental jurisdiction over the Pennsylvania state-law claims pursuant to 29 U.S.C. § 1367. We have jurisdiction over this appeal from a final order of the District Court under 28 U.S.C. § 1291.

3

provided by his parents; (2) Fox Chapel would provide an emergency care plan to teachers, cafeteria staff, and custodial staff; and (3) the school nurse or a parent would go on T.F.'s field trips. On August 20, 2010, T.S.F. formally disapproved of the 504 Plan as insufficiently detailed.

A second 504 meeting was held on August 24, 2010. At the meeting, T.S.F. provided Fox Chapel with a proposed 504 Plan that was nineteen pages long. Fox Chapel rejected the Plan proposed by T.S.F. Fox Chapel's Coordinator of Special Education, Dr. Lonnie Carey ("Dr. Carey") reasoned that some of the items in the 504 Plan proposed by T.S.F. were standard procedures in the district, and, therefore, it was unnecessary to reiterate such standard procedures in T.F.'s 504 Plan. A 504 Plan should be understandable and not lengthy. The lengthy Plan proposed by T.S.F. would "make it impossible for people to know what to do in an emergency because there would be too much to read." App. at 6. Instead, Fox Chapel proposed a second 504 Plan at this August 24 meeting which included two new accommodations: (1) T.F. would sit at a tree-nut-free table during lunch; and (2) T.F.'s parents would provide a "treat box" to T.F. to celebrate special occasions. Additionally, the second proposed 504 Plan provided that, in the event of an emergency, the school nurse should be called first, followed by 9-1-1, T.F.'s doctor, and then T.F.'s parents. T.S.F. objected to this Plan as well because she wanted T.F.'s teacher to carry and administer an EpiPen in case of an emergency, but under the Plan, the nurse would be called to administer the EpiPen.

Fox Chapel proposed a third 504 Plan on August 31, 2010, which included three additional accommodations: (1) T.F. would be permitted to purchase a tree-nut-free lunch

4

in the cafeteria as of September 13, 2010; (2) T.F.'s teacher would keep a tree-nut-free snack to give to T.F. when other students were receiving snacks; and (3) Fox Chapel staff were directed, in the event of an emergency, to follow the Food Allergy Action Plan for T.F. The Food Allergy Action Plan detailed which of T.F.'s possible symptoms would require administration of an EpiPen and which would require administration of an antihistamine. T.F.'s parents did not agree to this third 504 Plan. Another meeting was held on September 8, 2010, but no changes were made to the third 504 Plan at this meeting. After this meeting, the third 504 Plan was faxed to T.F.'s physician, Dr. MacGinnitie, who initialed it, indicating his approval.

On September 17, 2010, T.F.'s parents contacted the Department's Special Education Advisor, Dr. Malcolm Conner ("Dr. Conner") and alleged that no service agreement had been developed by Fox Chapel for T.F.'s food allergy. Dr. Carey, Fox Chapel's Coordinator of Special Education, informed Dr. Conner about the meetings on June 7, August 24, August 31, and September 8, 2010. Dr. Conner responded to T.F.'s parents that the 504 team had met and that due process proceedings were available to resolve disputes.

On October 13, 2010, a fourth 504 Plan was proposed by Fox Chapel, which added an additional accommodation requiring T.F.'s cafeteria table be cleaned with a special cleaner that removes food allergens, but this Plan was never adopted.

On October 18, 2010, T.F.'s parents filed a Due Process Complaint with the Department's Office for Dispute Resolution. On November 12, 2010, T.S.F. informed the principal that T.F. would be withdrawing from the school. On November 15, 2010,

5

the principal sent a letter to T.F.'s parents warning them that excessive absences could lead to truancy proceedings, and on November 18, 2010, Fox Chapel filed a citation for truancy. T.F.'s parents formally withdrew him from Fox Chapel on December 3, 2010 and enrolled him at Pennsylvania Cyber Charter School. On January 19, 2011, T.F.'s counsel, at the request of T.F.'s parents, withdrew the Due Process Complaint, and in April 2011, Fox Chapel withdrew the truancy citation. T.F. finished the rest of the 2010-2011 school year at the charter school and has since been enrolled at Shady Side Academy, a private school.

Appellants filed a second Due Process Complaint on February 1, 2012. After four hearings, the Hearing Officer found that Fox Chapel did not discriminate against T.F. or deny him a FAPE. Appellants filed an appeal in the United States District Court for the Western District of Pennsylvania on November 11, 2012. The parties submitted cross motions for summary judgment. The District Court granted Fox Chapel's motion for summary judgment and denied Appellants' motion. Appellants filed a timely Notice of Appeal.

II.

We exercise plenary review of a district court's grant of summary judgment, applying the same standard as the district court. *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 256 (3d Cir. 2013). "A grant of summary judgment is appropriate where the moving party has established 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). A material fact is one which "might affect the outcome of the suit

under the governing law." *Id.* We must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Id.*

The parties dispute whether the District Court should have applied a *de novo* standard of review or a modified *de novo* standard that gives deference to the factual findings of the Hearing Officer. The District Court applied the *de novo* standard of review which, from the Appellants' view, is a more lenient standard as it gives no deference to the Hearing Officer's factual findings. We need not decide the issue of what standard applies because the result is the same under either standard. The *de novo* standard favors the Appellants, and therefore, we assume *arguendo* that the *de novo* standard applies.

### III.

Section 504 of the Rehabilitation Act of 1973 states, in relevant part, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The statute defines "program or activity" to include "local educational agenc[ies]." 29 U.S.C. § 794(b)(2)(B).

Appellants argue that that Fox Chapel discriminated against T.F. on the basis of his disability and failed to provide him with a FAPE. Appellants assert two principal bases for their claim that T.F. was denied a FAPE: (1) that Fox Chapel failed to provide T.F. with a 504 Plan that was substantively appropriate and individualized; and (2) that Fox Chapel deprived Appellants of administrative enforcement procedures by failing to

7

provide an adequate 504 Plan. Appellants contend that the District Court erred in requiring them to prove intentional discrimination instead of merely a denial of a FAPE in order to recover tuition reimbursement. They argue that even if they were required to prove intentional discrimination, Fox Chapel's actions rose to the level of deliberate indifference, entitling them to compensatory damages. We find none of these arguments persuasive.

A.

To establish a claim for denial of a FAPE, Appellants must demonstrate that T.F.: "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." *S.H. ex rel. Durrell*, 729 F.3d at 260 (quotation omitted). The parties agree that the first two elements are satisfied, and the only element in dispute is the third.

To recover compensatory damages under Section 504, Appellants must establish intentional discrimination. *Id.* at 262. Here, Appellants seek tuition reimbursement, which the District Court viewed as a form of compensatory damages. Because the District Court concluded that the higher, intentional-discrimination standard applied, it did not evaluate whether T.F. was denied a FAPE without the requirement of proving intentional discrimination.

On appeal, in an effort to avoid the heightened burden of proof for compensatory damages, Appellants contend that tuition reimbursement is an equitable remedy. We are not persuaded by this argument. It is hard to imagine what would constitute

8

compensatory damages in these circumstances if not tuition reimbursement. Appellants have failed to identify any equitable relief sought by their complaint. As such, we agree with the District Court's application of the higher intentional-discrimination standard.

We will nonetheless consider whether Appellants can prove a denial of a FAPE to T.F. without requiring them to prove intentional discrimination. Appellants' primary arguments in support of their claims are that Fox Chapel failed to provide an individualized 504 Plan for T.F. and that, by failing to include a number of accommodations in the proposed 504 Plans, Fox Chapel deprived them of the benefit of administrative enforcement procedures. We are not persuaded by these arguments.

With regard to the alleged failure of Fox Chapel to provide an individualized 504 Plan, Appellants argue that Fox Chapel impermissibly relied upon a generic, district-wide food allergy policy, which was insufficiently detailed to meet T.F.'s unique needs. The record, viewed in the light most favorable to Appellants, does not support this contention. The record reveals that Fox Chapel developed a 504 Plan prior to the start of school and revised it on several occasions in response to T.S.F.'s objections. When faced with T.S.F.'s assertions that multiple drafts of its proposed 504 Plans were inadequate, Fox Chapel sent the third proposed 504 Plan to T.F.'s physician, who approved the accommodations. Fox Chapel declined to reiterate the substance of the general food allergy policy in its proposed 504 Plans for the simple reason that a 504 Plan related to food allergies must be accessible and understandable in the event of an emergency. Moreover, teachers and staff were trained to identify the symptoms of anaphylaxis and to administer epinephrine. Against the backdrop of this training and the district-wide food

9

allergy policy, the proposed 504 Plans, in an accessible manner, incorporated additional accommodations specific to T.F. that were not already encompassed by the district-wide policy and training. The failure of Fox Chapel to include each and every accommodation and detail requested by T.S.F. does not amount to a denial of a FAPE. *See Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282 (3d Cir. 2012) (stating that schools need only take "reasonable steps to accommodate" and are "not required to grant the specific accommodations requested by [p]arents").

Furthermore, Fox Chapel did not significantly impede parental participation in the decision-making process. Fox Chapel began working with T.S.F. on developing a 504 Plan weeks before the school year started. And, it is undisputed that Fox Chapel proposed four different 504 Plans and met with T.S.F. on multiple occasions to discuss the proposed Plans and potential modifications.

Appellants argue Fox Chapel's failure to implement all of the accommodations that they requested resulted in their inability to access procedural safeguards because, "in the absence of a written agreement, parents cannot seek enforcement through either" the Office of Civil Rights or the Department. Appellants' Br. at 37-38 (citing 34 C.F.R. § 104 App. A; 22 Pa. Code §§ 15.7, 15.8). But Appellants overlook other procedural safeguards that were available to them. The applicable Pennsylvania regulation states that "[p]arents may file a written request for assistance with the Department if . . . [t]he school district has failed to comply with the procedures in this chapter." 22 Pa. Code § 15.8(a). If T.F.'s parents felt that they were improperly denied accommodations to which T.F. was entitled, they had an administrative remedy. Notably, during the negotiations

10

over T.F.'s 504 Plan, T.S.F. contacted Dr. Conner of the Department and claimed that no service agreement had been adopted for T.F. Consistent with 22 Pa. Code § 15.8(b), Dr. Conner investigated and contacted Fox Chapel about T.S.F.'s complaints. Dr. Carey informed Dr. Conner in response that the 504 team had meet on four occasions, had proposed multiple 504 Plans, and had provided T.F.'s parents with procedural safeguards advising them of their due process rights. And, in accord with 22 Pa. Code § 15.8(b), Dr. Conner responded to T.F.'s parents, detailing Fox Chapel's efforts and offering an informal hearing or mediation to resolve the dispute. In light of the background of this case and the procedural remedies available to Appellants, we find no merit in Appellants' contentions that Fox Chapel's failure to adopt all of their requested accommodations resulted in their inability to access procedural safeguards.

Viewing the record in the light most favorable to Appellants, we conclude that Appellants cannot show that T.F. was "denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." *See S.H. ex rel. Durrell*, 729 F.3d at 260 (quotation omitted).

B.

While we find that Appellants cannot establish a denial of a FAPE even without consideration of the intentional-discrimination standard, we agree with the District Court that the higher standard of proof for intentional discrimination applies here because Appellants seek compensatory damages in the form of tuition reimbursement. The District Court correctly concluded that Appellants cannot, as a matter of law, carry their burden of proving intentional discrimination by Fox Chapel. This court held in *S.H. ex*

11

*rel. Durrell* that in order to prove intentional discrimination, a party need only establish deliberate indifference. *Id.* at 262-65. To establish deliberate indifference, "Appellants must present evidence that shows both: (1) *knowledge* that a federally protected right is substantially likely to be violated . . . , and (2) *failure to act* despite that knowledge." *Id.* at 265.

The undisputed evidence here establishes that Fox Chapel accepted T.F.'s food allergy and worked diligently with his parents to ensure his meaningful participation in educational activities and meaningful access to educational benefits. Fox Chapel met with T.F.'s parents on multiple occasions and offered four proposed 504 Plans. Fox Chapel made numerous revisions to its proposed 504 Plans in an attempt to address the concerns of T.F.'s parents. Fox Chapel contacted T.F.'s treating physician to ensure that their proposed 504 Plan would satisfy T.F.'s needs, and T.F.'s physician approved of the Plan. The fact that Fox Chapel did not include every accommodation that T.F.'s parents requested does not constitute a failure to act. And, as previously stated, many of the accommodations sought by T.F.'s parents were covered by the district-wide food allergy policy and by the training for teachers and staff related to identifying anaphylaxis and administering epinephrine.

In this context, our role is not to determine whether Fox Chapel could have done a "better" job of accommodating T.F.'s food allergy. The issue before the court is whether Fox Chapel was deliberately indifferent to T.F.'s rights, such that T.F. "was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." *Id.* at 260. The undisputed facts before us, viewed in the light most favorable

12

to Appellants, do not support a finding that Fox Chapel acted with deliberate indifference toward T.F.

IV.

For the aforementioned reasons, we affirm the District Court's grant of summary judgment to Fox Chapel on all counts.